KLINGMAN & SCOULAR, Appellants, v. RACINE-SATTLEY COMPANY, Appellee.

**Contracts:** BREACH: DAMAGES: EVIDENCE OF PROFITS. Under the agreement by which plaintiff was to sell defendant's machinery and to use defendant's warerooms for that purpose, as well as for the sale of other goods than those of defendant, and by which defendant was to share in the profits of all such sales, the question of profits arising to plaintiff for the time for which he was prevented by defendants from pursuing the contract involved profits from the sale of goods other than those of defendant.

**Same:** PROSPECTIVE PROFITS: HOW DETERMINED. In determining the future profits to be derived from the sale of goods, the reasonable cost of salesmen and clerks, although their work may have been performed by the parties themselves, should be deducted from the gross receipts.

**Same:** EVIDENCE. In this action to recover prospective profits on the sale of goods because of defendant's breach of the contract, evidence concerning what plaintiffs may have earned in another employment over and above their expenses during the remaining term of the contract was immaterial; although the rule might be otherwise if the action was for a loss of personal earnings.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, Judge.

SATURDAY, DECEMBER 17, 1910.

ACTION to recover damages for breach of written con-

tract. At the conclusion of the evidence for both parties the court, on motion of defendant, withdrew from the consideration of the jury a portion of the plaintiffs' claim and as to the balance a verdict was rendered for plaintiffs in the sum of $105, on which judgment was entered. From this judgment, plaintiffs appeal.—*Affirmed.*

*Parrish & Dowell,* and *T. A. Cheshire,* for appellants.

*Read & Read* and *E. K. Maine,* for appellee.

McCLAIN, J.—The principal question discussed by counsel is as to the correctness of the action of the court in determining that there was no evidence to support the portion of the claim which was withdrawn from the consideration of the jury, and the issues and evidence need only be stated in so far as they related to that question.

Plaintiffs entered into a written contract with defendant, a corporation engaged at Des Moines in the wholesale business of selling agricultural implements throughout the United States, by which contract plaintiffs were to have the right for five years from August, 1905, to make use of defendant's repository and warerooms without rent or charge for the purpose of carrying on the retail business of selling defendant's machinery within certain specified territory, and also selling on their own account specified lines of goods consisting in general of buggies and harness. As compensation for the selling of defendant's machinery the plaintiffs were to receive the difference between the wholesale price of such machinery and the retail price at which plaintiffs should sell it, and plaintiffs were to pay defendant a percentage of the actual profit on goods which they were allowed to sell, not procured at wholesale from the defendant. Plaintiffs continued in business under this arrangement for two years, at the end of which time the contract was rescinded by defendant and plaintiffs were

excluded from the further sale of defendant's machinery and from further use of defendant's building. For this alleged breach of contract plaintiffs sought to recover such profits as would have accrued to them during the remaining three years of the contract had they been allowed to carry it out; and the court holding that there was no evidence as to what profits would thus have accrued took all questions as to such profits from the jury.

Counsel on both sides concede that under the authority of *Hichhorn v. Bradley,* 117 Iowa, 130, loss of profits of a business may be recovered, if the plaintiff is prevented from carrying on such business by breach of contract on the part of the defendant, and the sole question argued in this respect is as to whether, considering the business done during the two years of its continuance under the contract, there was any evidence which could be made the basis of estimating the profits which would have accrued during the remaining three years of the contract had defendant not revoked it.

1. CONTRACTS: breach: damages: evidence of profits.

In the discussion of this question we think that the trial judge, in his expression of views preserved in the record, erred in excluding the profits, if any, which plaintiffs realized in the sale of goods which they were permitted to handle, aside from the machinery sold for the defendant. It was evidently in the contemplation of the parties that in the use of the room furnished to plaintiffs in defendant's building, for the sale not only of defendant's machinery, but also of lines of goods carried by the plaintiffs, profits would arise and these profits were as much in the contemplation of the parties as the profits on the machinery sold by defendant. It does not follow that plaintiffs could have made as large profits on their lines of goods carrying on their business elsewhere, and if the evidence shows profits of this character they should as we think, plainly have been taken into account in determining

whether any profits were realized by plaintiffs in carrying on the business under the contract.

Under this view of the contract we must proceed to determine whether there was any evidence tending to show that profits were realized by plaintiffs in carrying on their business during the two years of the continuance of such business under the contract. There was evidence for plaintiffs tending to show that the profits of the business during the first year of operation under the contract were $2,326.16, which included $456.12 of profits on sales of plaintiffs' own goods, and that during the second year of the contract profits aggregating $2,807.63 were realized, of which the sum of $849.69 was realized on the sale of plaintiffs' own goods. But in estimating these profits the plaintiffs deducted from gross receipts nothing by way of expenses except small amounts for janitor service, telephone service, and like items and testified that the business was carried on by themselves individually, giving their whole time (with a slight exception which need not here be noticed) to the conduct of the business. In other words, plaintiffs acted as their own salesmen and clerks and were at no expense for the employment of assistance of this character. Now the claim of defendant is that in estimating the profits, that is, the net profits of plaintiffs' business the value of plaintiffs' services necessarily rendered in carrying on the business should have been deducted from the gross receipts, and as there was no evidence as to the value of such services (save that to be hereafter referred to as inadmissible), there was nothing on which to base an estimate of the net profits in conducting the business during the two years of its continuance. The lower court sustained this contention on the part of the defendant, and also expressed the opinion that, on the basis of the value of plaintiffs' services evidenced by the testimony brought out by defendant on that subject in cross-examining the plaintiffs as

*2. SAME: prospective profits: how determined.*

witnesses, over objection, it plainly appeared that no profits were realized.

There was nothing in the contract requiring or contemplating that plaintiffs should give their personal services to the conduct of their business or the sale of defendant's machinery. If they had hired salesmen and clerks to carry on the business, as they might properly have done, and then, on breach of the contract, had sued for loss of profits, seeking to prove the profits of the two years for the purpose of showing loss of profits during the remaining years of the contract, it would certainly have been true that in estimating the profits earned they must deduct from the gross receipts the expenses of the salesmen and clerks. How can their damages by way of loss of profits be greater if, instead of employing salesmen and clerks at a reasonable expense, they carry on the business by personally rendering the same services? It must be borne in mind that what plaintiffs are seeking to recover is not loss of personal earnings, but loss of profits in business; and if they seek to show as the basis of their proof of loss of profits what the proceeds were during the two years, they must deduct from their gross receipts the reasonable expense for salesmen and clerks whether the necessary services of that character in the business are rendered by themselves or by others. The reasonable expenses of such services were not to be determined by what plaintiffs were individually earning before entering into this contract, nor what they were able to earn either for services or by way of profits after the contract was terminated. Having entirely failed to show what the reasonable expense for salesmen and clerks would have been, they failed to furnish an essential element of the computation necessary to be made in proving profits during the two years of their business, for the purpose of showing what the proceeds might have been during the remaining three years. It must always be borne in mind that what plaintiffs were

trying to prove was prospective profits, and until they have furnished some basis on which prospective profits might be computed they had furnished no evidence justifying a recovery for loss of profits. In the case of *Hichhorn v. Bradley* above referred to, involving the recovery of prospective profits under a contract, this court sustained an instruction authorizing the jury in determining the question to take into account the gross returns which might have been reasonably made in the sale of the goods of which the claimant for damages was deprived, and what it would have cost such party to handle the goods in the territory; thus, in effect, announcing the rule recognized by the lower court in the present case, that the reasonable expense of selling the machinery of defendant and plaintiffs' own goods must be deducted from the amount of the gross returns in order to arrive at the net profits. We use the term "gross returns" in this connection not as indicating the gross amount of plaintiffs' sales or prospective sales of defendant's machinery, or of their own goods, but the gross returns to them on such sales from which the reasonable expense of carrying on the business must be deducted. We are unable to see that there was anything in the evidence furnishing a basis for the estimation of prospective profits, and the court was therefore justified in taking from the jury any question relating to such profits.

II.    Error is assigned as to the rejection of evidence as to what the plaintiffs had been able to earn, if anything, above their expenses since they were put out of business by

3. SAME:    defendant's breach of contract; but we think
   evidence.    that in a case like this, where recovery is
not asked for loss of personal earnings, but for loss of profits in business only, the question as to what plaintiffs were able to make in a similar business in a different locality is wholly immaterial. If plaintiffs had established loss of prospective profits, it would have been wholly im-

material whether, in another business or by other undertakings, they could have made profits offsetting those lost, for, as already stated, the carrying out of their contract with defendant did not necessarily involve personal services. Therefore, in attempting to prove loss of profits, plaintiffs would have furnished no basis for computation if they had been allowed to prove that they engaged in another business with slight profit.

Error is also assigned in the admission of evidence offered by defendant in the cross examination of one of the plaintiffs, as a witness, as to what salary he was getting before entering into the contract with defendant. In the view which the trial court finally took of the case this evidence was wholly immaterial, but its introduction was not prejudicial to plaintiffs. It is true that if, as the lower court seemed to think, it was proper to fix the value of plaintiffs' services in carrying on the business for two years on the basis of what they would have been able to earn otherwise, then perhaps the evidence would have been prejudicial. But, as already suggested, the profits of the business as a basis for estimating future profits would not have been less on account of the value of plaintiffs' services personally rendered being greater than required to conduct the business, nor would such profits have been greater by reason of the plaintiffs rendering their own services without proof of any value of such services whatever. For the purpose of estimating the profits, the reasonable expense of conducting the business alone was important, for it should not be assumed that during the remaining three years plaintiffs would conduct the business otherwise than for the purpose of making all the profits which it was capable of returning.

What we have said disposes of the case, with the result that no error was committed by the trial court in withdrawing from the jury the question of prospective

profits, and no error is assigned with reference to the submission to the jury of questions which were submitted.

The judgment of the trial court is therefore *affirmed*.

DEEMER, C. J., and WEAVER, J., dissenting.