### HARNICK v. PENNSYLVANIA R. CO.

#### (District Court, S. D. New York. June 12, 1918.)

#### No. 229.

ACTION ☛68—STAY—ACTIONS AGAINST RAILROADS—ORDER OF DIRECTOR GENERAL.

Order No. 26 of the Director General of Railroads, dated May 23, 1918, providing that "upon a showing by the defendant carrier that the just interests of the government would be prejudiced by a present trial of any suit against a carrier under federal control * * * the suit shall not be tried during the period of federal control" is within the powers conferred by Congress and the President, but an application for a stay is addressed to the discretion of the court and the burden rests on defendant to show that interests of the government would be substantially prejudiced by a present trial.

At Law. Action by Charlie Harnick against the Pennsylvania Railroad Company. On application by plaintiff for preference. Granted.

S. A. Machcinski, of New York City, for plaintiff.

Burlingham, Veeder, Masten & Fearey, of New York City (Samuel C. Coleman, of New York City, of counsel), for defendant.

MANTON, Circuit Judge. Plaintiff sues for personal injuries which have permanently crippled him. The action is at issue on the calendar and is awaiting its turn for trial. While holding the common-law term of this court on May 20, 1918, an application was made before me for a preference. When the motion was called, the plaintiff defaulted. Thereafter, and on May 25, 1918, an order to show cause was obtained asking to open the default and hear the motion upon the merits. This will be granted.

Plaintiff makes out a case sufficiently strong to warrant the granting of a preference and the obtaining of a speedy trial. This for the reason that his serious injuries and financial condition demand the relief he asks. The only obstacle is whether or not this case should be stayed under order of the Director General of Railroads of May 23, 1918, known as Order No. 26, which provides:

"That upon a showing by the defendant carrier that the just interests of the government would be prejudiced by a present trial of any suit against any carrier under federal control, which suit is not covered by General Order No. 18 and which is now pending in any county or district other than where the cause of action arose, or other than in which the person alleged to have been

☛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

injured or damaged at that time resided, the suit shall not be tried during the period of federal control: Provided, if no suit on the same cause of action is now pending in the county or district where the cause of action arose, or where the person injured or damaged at that time resided, a new suit may, upon proper service, be instituted therein; and if such suit is now barred by the statute of limitations, or will be barred before October 1, 1918, then the stay directed by this order shall not apply unless the defendant carrier shall stipulate in open court to waive the defense of the statute of limitations in any such suit which may be brought before October 1, 1918.

"This order is declared to be necessary in the present war emergency. In the event of unnecessary hardship in any case either party may apply to the Director General for relief, and he will make such order therein as the circumstances may require consistent with the public interest.

"This order is not intended in any way to impair or affect General Order No. 18 as amended by General Order 18a."

The cause of action arose at Keiser, Pa. The plaintiff, at the commencement of this action, resided in Westchester county, New York state, and instituted a suit in the Supreme Court of that county. The defendant removed it to this court. By acquiescence of the defendant the court has jurisdiction.

On August 29, 1916, Congress passed an act, entitled "An act making appropriation for the support of the army for the fiscal year ending June 30, 1917, and for other purposes" (Act Aug. 29, 1916, c. 418, 39 Stat. 645 [Comp. St. § 1974A]), which provides as follows:

"The President, in time of war, is empowered through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion, as far as may be necessary, of all other traffic thereon, for the transfer or transportation of troops, war material and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

Under this authority, on December 26, 1917, by a proclamation of the President, the government took possession and assumed control, on the 28th of December, 1917, of each and every system of transportation and appurtenances thereof, located wholly or in part within the boundaries of the continental United States. This proclamation directed:

"That the possession, control, operation and utilization of such transportation systems hereby by me undertaken shall be exercised by and through William G. McAdoo, who is hereby appointed and designated Director General of Railroads."

By Act Cong. March 21, 1918, c. 25 (Comp. St. 1918, §§ 3115¾a–3115¾p), the President was authorized and given "such other and further powers necessary or appropriate to give effect to the powers herein and heretofore conferred." The President's proclamation of December 26, 1917, provided:

"Until and except so far as said Director shall from time to time otherwise by general or special orders determine, such systems of transportation shall remain subject to all existing statutes and orders of the Interstate Commerce Commission and to all statutes and orders of the regulating commissions of the various states in which said systems or any part thereof may be situated. But any orders, general or special, hereafter made by said Director, shall have paramount authority and be obeyed as such."

Section 10 of the Act of March 21, 1918, provides:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law. * * * But no process, mesne or final, shall be levied against any property under such federal control." Comp. St. 1918, § 3115¾j.

The jurisdiction of the District Court is limited, and depends upon the statutory enactments of Congress. Its jurisdiction may therefore be ·limited by the same power which creates it. Congress has given authority to the Director General, and the President's proclamation provides, that any orders, general or specific, made by the Director, shall have paramount authority and be obeyed as such. Likewise it is provided that actions at law or suits in equity may be brought by or against such carriers and judgments rendered as now provided by law. This indicates clear intent to permit actions pending to be tried and actions to be instituted thereafter. The right to pursue a remedy in a particular court is not a vested right and may be removed while an action is pending. Railroad Co. v. Grant, 98 U. S. ·398, 25 L. Ed. 231. The right to stay an action· pending, under Order No. 26, however, is dependent upon whether the interest of the government be prejudiced by a present trial of a pending suit, and there must be a showing of prejudice by reason of a present trial.

Therefore the intention of Order 26 is to address the discretion of the court as to its application in each particular case. Since the plaintiff's case warrants a preference, a grave injustice would be imposed upon him who has sought his proper forum (except for the rule) to now require the suspension of his trial and· compel him to sue in the courts of Pennsylvania. There can only be read from the act an intention to divest this court· of jurisdiction upon good cause being shown on the part of the railroad company defendant. Indeed, the defendant here alleges, in opposing affidavits, that they do not ask at this time for a stay but urge Order 26 as a defense to the motion for a preference. There is no showing here as to the number of witnesses or what inconvenience the defendant would be put to by its witnesses coming to this jurisdiction to try the case when reached. There is no showing, from the papers, the number of men employed by the defendant, or the nature or quality of the work engaged in at the present time. Indeed, the men so employed by the defendant, who are necessary witnesses in the defense of the action, could easily be replaced by men who could perform their work during their absent period. There is no position requiring particular skill which could not be so filled. To say that the difference of a few hours in point of time required in railroad travel would result in serious consequence ·or prejudice to the defendant, is stretching credulity.

The application for a preference will therefore be granted and the case set down for trial for June 20, 1918.