## WATSON CO. v. LONE STAR SERVICE STATION. (No. 782.)

Court of Civil Appeals of Texas. Waco.
March 28, 1929.

Rehearing Denied April 18, 1929.

Phillips, Townsend & Phillips and Tom Scurry, all of Dallas, for appellant.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellee.

BARCUS, J. In 1920, appellee, Lone Star Service Station, a corporation, opened a gasoline service station on Commerce street in the city of Dallas, and in connection therewith operated a parking station, washed and greased cars, and sold automobile accessories, such as casings, tubes, and small articles used by the automobile trade. Appellee's place of business adjoined property owned by the Terminal Building Corporation. About September, 1923, said Terminal Building Corporation made a contract with appellant, Watson Company, to do the major portion of the work in

tearing down the old building and erecting an 18 or 19 story building on said property known as the Santa Fé Building, and gave to Martyn Bros. a contract to do the plumbing work in connection with said building. In the contract Watson Company made, it was specifically provided that said company "shall adequately protect adjacent property, as provided by law and the contract documents or as required by proper care, and shall provide and maintain all passageways, guard fences, lights, and other facilities for protection required by public authority or local conditions."

Appellee instituted this suit against Watson Company, Terminal Building Corporation, and Martyn Bros., jointly and severally, to recover damages which it claimed to have suffered in the way of loss of profits to its business occasioned by their negligence during the 16 months said building was being erected. It claimed that in the wrecking of the old building on said property and in the erection of the new building, said parties negligently and carelessly caused to be knocked or dropped on appellee's premises, and on the cars of its customers, wet mortar, cement, pieces of lumber of various sizes, bricks, stones, dust, débris, and steel, which damaged the cars and caused its patrons to stop coming to its place of business. It further alleged that the defendants dug ditches along in front of its property in such way that its customers could not get into the filling station operated by it to get service, and that by reason of said acts of negligence on the part of the defendants, and each of them, its business during the 16 months' period of time the building was in course of construction was greatly diminished, and that it lost in net profits the sum of $14,608.82, for which it prayed judgment.

Each of the defendants filed separate answers. The cause was tried to a jury, and after the testimony was in the trial court instructed a verdict for Martyn Bros. and the Terminal Building Corporation, about which no complaint is made. The trial court submitted the issues as between Watson Company and appellee to the jury on five special issues, in response to which the jury found that Watson Company threw, or caused to be thrown or knocked off and caused to fall, upon the property of the plaintiff, bricks, particles of brick, mortar, lumber, or pieces of lumber, and caused particles of gravel or concrete to fall upon the property of appellee, and that said acts caused it to suffer a loss of profits in the operation of its business during the time said condition existed to the amount of $4,500. The trial court, based on said answers, entered judgment for appellee against appellant for said amount.

Appellant presents 21 different propositions as grounds for reversal of the judgment of the trial court. By its first six propositions it contends the judgment of the trial court is erroneous and that the trial court should have instructed a verdict for it, because the evidence was not sufficient to support a verdict; its main contention being that appellee's evidence, in its most favorable aspect, was of such a meager, unsatisfactory, and indefinite nature with reference to the loss of profits, if any, occasioned by the acts of appellant, as not to enable the jury to to ascertain with any reasonable degree of certainty the amount thereof. We overrule these propositions. The officers of appellee testified in detail to the kind, class, and character of business it had been doing since it first established its business in 1920, and introduced in evidence the books of the corporation, showing the amount of the purchases, sales and expenses and gross and net profits during the 16 months immediately preceding the beginning of the erection of the building and the 16 months during which the building was being constructed by appellant. The officers of appellee further testified with reference to the falling off of its business, especially as it related to the storage and washing of cars during said time. Our courts now uniformly hold that the loss of profits suffered by a business concern, caused by and during the time a building is being constructed on an adjoining lot, is recoverable. American Construction Co. v. Caswell (Tex. Civ. App.) 141 S. W. 1013; American Construction Co. v. Davis (Tex. Civ. App.) 141 S. W. 1019 (error refused); Hart Bros. v. Dallas County (Tex. Com. App.) 279 S. W. 1111; Humphreys Oil Co. v. Liles (Tex. Com. App.) 277 S. W. 100; Bagby v. Hodge (Tex. Civ. App.) 297 S. W. 882. Without quoting it at length, we think the testimony was sufficient not only to authorize the jury to find that appellee had suffered a loss in its net profits, but that the evidence was sufficient for the jury to ascertain with reasonable certainty the amount thereof.

Appellant by its seventh proposition contends that special issue No. 5 submitted by the court was duplicitous, in that it asked the jury whether Watson Company "threw or caused to be thrown or knocked off and caused to fall upon the property of the plaintiff, bricks, particles of brick, mortar, lumber or pieces of lumber"; its contention being that the court should have asked the jury in separate issues whether bricks or motar or lumber fell upon appellee's property and caused the damage. We overrule this proposition. Appellee's cause of action against appellant was for damages which were occasioned by débris of different sorts falling during the time of the construction of said building. Whether all of the different kinds of débris fell or not was not material. If appellant caused any of the débris named to fall and same caused the damage, appellee would be entitled to recover the damages occasioned thereby. Under the facts in this case, we think said issue was properly submitted.

Davis v. Christensen (Tex. Civ. App.) 247 S. W. 303; H. E. & W. T. Ry. Co. v. Hough (Tex. Civ. App.) 260 S. W. 233; Texas Electric Ry. v. Jones (Tex. Civ. App.) 262 S. W. 131; Continental Insurance Co. v. Nabors (Tex. Civ. App.) 6 S.W.(2d) 151.

Appellant's propositions Nos. 8, 9, and 10 relate to the failure of the trial court to give special instructions Nos. 1, 2, and 3 requested by it in explanation of issue No. 5 as submitted by the trial court. Instruction No. 1 asked the court to instruct the jury that they would not consider any loss of profits proximately resulting from the driving in and out of trucks on Commerce street beyond the curb line of appellant's property. Instruction No. 2 asked the court to instruct the jury that they must find with reasonable certainty the amount of the loss of profits, if any. Instruction No. 3 asked the court to instruct the jury that they must find with reasonable probability the amount of the loss of profits, if any. The special instructions requested partake very largely in their character of a general charge. Instructions very similar to these were requested and refused in the case of Owens v. Navarro County Levee Improvement District, 115 Tex. 263, 280 S. W. 532, and the Supreme Court, in answer to certified questions from this court, held that the trial court did not commit error in refusing to give the special instructions requested in said case. We think the instructions given by the trial court in connection with special issue No. 5 were as favorable to appellant as it had a right to ask.

By propositions 11 and 12 appellant contends the trial court committed error in admitting in evidence appellee's sales book and ledger, on the theory that same were not books of original entry, and the further objection to the ledger that its correctness had not been established. It appears that the sales book was kept entirely by W. C. Blancette, one of the owners of appellee, the entries therein being made by him personally at the close of each day. When sales of merchandise of any kind or character, including gasoline and oil, were made, or when any money was collected for storage or for washing cars, a memorandum card or ticket was made, showing the amount of cash received. At the close of each day Mr. Blanchette would take all of these memorandum tickets of sale, check them, add them up on an adding machine, and then put the totals thereof in the sales book. He testified said book was correctly and accurately kept. The ledger was kept by J. C. Blanchette. He would take the various bills of lading and memoranda of purchase of different articles and post them to the ledger account, showing thereby the total purchases from time to time. He would take from the sales book account as made by W. C. Blanchette the amount of sales made from day to day, and would thereby be able to show from said ledger the amount of purchases

and the amount of sales each day, month or year. J. C. Blanchette kept said ledger account during the entire time with the exception of a part of 1923, when one Dietz did the work. J. C. Blanchette testified, however, that he checked the work of said Dietz and that the entire book was correctly kept. The general rule is now well established that entries made in a permanent record from sale tickets or memoranda constitute the original book of entry, and as such is admissible in evidence. 22 C. J. 874; Weinberg v. Garren (Tex. Civ. App.) 155 S. W. 1013; Joy v. Fakes Furniture & Carpet Co. (Tex. Civ. App.) 286 S. W. 611; Heid Bros. v. Commercial Nat. Bank (Tex. Com. App.) 240 S. W. 908, 24 A. L. R. 904; volume 3, Wigmore on Evidence (2d Ed.) p. 278. The rule as laid down by Wigmore on Evidence, supra, is:

"Where an entry is made by one person in the regular course of business recording an oral or written report made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present exception, verified by the testimony of the former person only, provided the practical inconvenience of producing on the stand the numerous other persons thus concerned would in the particular case outweigh the probable utility of doing so."

In this case it appears that there were a large number of small entries of cash sales of various kinds made each day. We think the rule above announced is clearly applicable to the facts in this case, and that the trial court did not commit error in admitting said books in evidence.

Propositions 13 and 14 complain of the action of the trial court in permitting the witness Williams to testify as an expert accountant what appellee's books showed with reference to the purchases, sales, expenses, and profits of the business during the 16 months immediately preceding the beginning of the erection of the building in controversy and the 16 months during its construction. His testimony was limited to what the books revealed, based on the supposition that they had been correctly and accurately kept. Appellant's objection was that the books had been improperly admitted in evidence and it could not therefore be assumed that they were correct. We overrule this contention. As above stated, we think the books were properly admitted in evidence. If it could be said there was any error in the action of the trial court in admitting said books or the testimony of the witness Williams in evidence, we think same was cured by reason of the fact that appellant offered in evidence the income tax reports made by appellee for the years 1922, 1923, 1924, 1925, and 1926, which showed the total sales and purchases, together with the costs of sales, and the gross profits for each of the years in controversy, and

which corresponded exactly with said items in said books and said tax reports were compiled from figures and data in said books; and appellant and its codefendants, without objection, from any party, used T. F. Kennedy, an expert accountant, as a witness, who gave in evidence practically the same figures and same results derived from the inspection of said books as those given by the witness Williams. Schaff v. Ridlehuber (Tex. Civ. App.) 261 S. W. 523. Volume 2, Wigmore on Evidence (2d Ed.) par. 1230, states the rule to be: "Where a fact can be ascertained only by the inspection of a large number of documents, made up of very numerous detailed statements—as the net balance resulting from a year's vouchers of a treasurer, or a year's accounts in a bank ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper."

Under propositions 16 to 21, inclusive, appellant complains of the action of the trial court in permitting different witnesses to testify relative to certain facts. We have examined each of them and do not think they show any reversible error.

We have examined all of appellant's assignments of error and propositions thereunder, and same are overruled. The judgment of the trial court is affirmed.

### On Motion for Rehearing.

In its motion for rehearing appellant contends that we were in error in disposing of its first six propositions, on the theory that each of them presented in different phases the error of the trial court in refusing to instruct a verdict for it because of the insufficiency of the evidence. Appellant contends that some of said propositions present the distinct and separate issue that the evidence was not sufficient to authorize the jury to find or apportion the amount of damage caused by it, as distinguished and separated from that caused by the other contractors on said building. As we construe these propositions, the underlying principle back of same is that the evidence was not sufficient on that phase to support the findings of the jury.

The record shows that the Terminal Building Corporation, which owned the ground and had the old building destroyed and the new one erected, let the contract to four different firms, namely: The plumbing contract was let to Martyn Bros., which included all outside plumbing and sewer connections; the contract for glass and glazing was let to Buse Ingram, of Fort Worth; and the contract for the steel work was let to Austin Bros. Practically all the other work, both for the destruction of the old building and the erection of the new, was let to appellant. The contract price to appellant took by far the major portion of the entire cost of the building. The testimony of the witness Elliott, who was secretary of the Terminal Building Corporation, was that Watson Company carried out and performed all of the provisions of its contract called for in the erection of said building. The testimony was sufficient to show to a reasonable extent the damage caused by Martyn Bros. in carrying out their contract, and also the damage, if any, occasioned by the other contractors with Terminal Building Corporation. The jury was specifically instructed by the court that in assessing damages, if any, it should only consider such loss of net profits to plaintiffs' (appellees') business as it found to be directly caused by the acts and conduct of the servants or agents of the defendant Watson Company, and that it should not consider any loss of profits caused by any other contractor, subcontractor or their agents, servants or employés. The statement of facts embraces between three and four hundred pages. We have carefully examined same in the light of appellants' motion for rehearing, and we think the evidence was sufficient to enable the jury to find with reasonable certainty the amount of damage caused appellees by the acts of appellant alone, and we think the evidence supports the amount of the verdict as rendered.

The motion for rehearing is overruled.